[Civ. No. 1838.    Third Appellate District.—April 16, 1918.]

SAN JOAQUIN VALLEY BANK (a Corporation), Plaintiff, v. GATE CITY OIL CO. (a Corporation), et al., Defendants; J. F. LYNCH, Appellant; J. JEROME SMITH et al., Respondents.

EXECUTION—CONTRIBUTION—ACTION BY SURETY AGAINST COSURETIES—PAYMENT OF JUDGMENT—INSUFFICIENCY OF EVIDENCE.—In this proceeding under section 709 of the Code of Civil Procedure by a surety on a promissory note to compel contribution from his cosureties after judgment, it is held that the evidence justified the conclusion that defendant had not paid the judgment with his own money, and therefore was not entitled to contribution.

ID.—CONSTRUCTION OF SECTION 709, CODE OF CIVIL PROCEDURE—RULE OF PROCEDURE.—Section 709 of the Code of Civil Procedure merely announces a rule of procedure, and not a maxim of substantive

law, and simply provides a convenient method of enforcing con-
tribution by a judgment debtor who has paid a judgment as against
a codefendant liable for a proportion of the debt.

APPEAL from an order of the Superior Court of San
Joaquin County denying a motion for contribution. C. W.
Norton, Judge.

The facts are stated in the opinion of the court.

Cross & Lynch, Geo. F. McNoble, and A. H. Carpenter,
for Appellant.

Nutter & Orr, O. B. Parkinson, and Philip C. Boardman,
for Respondents.

CHIPMAN, P. J.—This appeal is taken from an order
made after judgment denying the appellant's motion for con-
tribution under section 709 of the Code of Civil Procedure.
The original action was brought upon a promissory note exe-
cuted by defendant corporation to plaintiff and which, as
was found by the court at the trial, was signed by defend-
ant corporation as principal and by defendants Smith, Lynch,
and Giottonini as sureties. Plaintiff had judgment in the
action and on appeal to the supreme court the judgment was
affirmed on May 27, 1915. (170 Cal. 250, [149 Pac. 557].)

It was also found by the trial court that as between the
defendants, the said sureties, they executed the note under an
agreement between themselves and defendant Gate City Oil
Company that they were merely sureties or accommodation
makers; and that said Gate City Oil Company was the prin-
cipal debtor and should pay the amount to become due on
said note, and they should have no liability chargeable against
them, but that plaintiff was not affected by such agreement.
The defendant, Gate City Oil Company, received the entire
amount of said note for its use and benefit. The defendant
Gate City Oil Company and defendant Lynch, appellant
herein, took an appeal from said judgment to the supreme
court rendered in favor of the San Joaquin Valley Bank, but
defendants Smith and Giottonini did not appeal. In that
appeal, said defendants, the Oil Company and Lynch, gave
an undertaking in the usual form to stay the enforcement of
the judgment appealed from conditioned for the payment of

the judgment by appellants if affirmed, and if payment was not made by appellants as provided therein, that judgment might be entered against the sureties on said bond. The sureties on this undertaking were C. L. Flack, who was at all times during the litigation one of the principal owners of the defendant Gate City Oil Company, and Robert McFadden. Defendant and appellant Lynch during all of said times held a contract signed by the said Flack and one W. R. Jacobs, who was also a principal owner in the Gate City Oil Company, indemnifying him against liability on the note sued upon. On· the going down of the *remittitur* from the supreme court, an abstract of the judgment was filed in the recorder's office of Kern County, where the Gate City Oil Company held and owned certain property. After the affirmance of the judgment in said action and about the time the *remittitur* went down and the abstract of the judgment was recorded in Kern County, said Jacobs and said Flack, as the officers and managing agents of the Gate City Oil Company, entered into an agreement with the Northern Oil Company by which the Gate City Oil Company was to sell certain of its leasehold interests in. Kern County to the said Northern Oil Company. But the Northern Oil Company, learning of the filing of the abstract of the judgment in the recorder's office of Kern County, declined to complete the purchase until the judgment had been satisfied and the property released from the lien.

The defendant, J. F. Lynch, claims to have paid the full amount of the judgment, to wit, the sum of $8,145.22, and upon that claim he instituted these proceedings to compel contribution from the other defendants, Smith and Giottonini.

Within ten days after the date on which he claims to have paid the whole of said judgment, Lynch filed with the clerk of the court where said judgment was rendered a notice of such payment by him and his claim to contribution from the other defendants, the said Smith and Giottonini, and gave the notice required by said section of the code. The matter was heard upon the motion of said Lynch made upon affidavits and upon evidence submitted by said defendants Smith and Giottonini, and oral testimony submitted at the hearing. The said Smith and Giottonini made no claim that they had paid the said judgment or any part thereof.

The matter was submitted to the court for decision, which is found in the record and is as follows: "The motion of defendant J. F. Lynch for an order that an execution herein be issued in favor of said defendant J. F. Lynch and against the defendant Gate City Oil Company, a corporation, J. Jerome Smith, and F. F. Giottonini, upon the ground that the said defendant J. F. Lynch has paid more than his due proportion of the judgment.

"Certain affidavits and evidence were introduced in support and against said motion and the defendant J. F. Lynch having filed herein objections to certain evidence introduced against said motion and defendant J. F. Lynch having also filed a motion to strike out certain affidavits introduced herein in opposition to said motion, and said motion and objection having been heretofore argued by respective counsel and submitted to the court for consideration and decision and after due deliberation thereon the court this day rendered its decision as follows, to wit: That said objections to certain evidence be overruled.

"That petitioner's motion to strike out be denied. And that petitioner's motion to order execution issue herein be and the same hereby is denied. To which ruling Geo. F. McNoble, Esq., Attorney for petitioner, duly excepts.

"Dated: January 31st, 1916."

The appeal is from said order or decision and the appellant assigns the following particulars as to which he claims there is no evidence to support the order or decision: 1. That there is no evidence to justify the implied finding that defendant Lynch did not pay the full amount of the judgment in the case of the said *San Joaquin Valley Bank* v. *Gate City Oil Co.;* 2. There is no evidence to justify the finding that defendant Lynch is not entitled to contribution for such payment of said judgment from defendants Smith and Giottonini; 3. There is no evidence to sustain the finding that the Gate City Oil Company paid the aforesaid judgment or any part or portion thereof; 4. There is no evidence to sustain the finding that said Lynch has not paid more than his due proportion of the aforesaid judgment.

It is claimed by respondents that the transaction by which payment of the judgment against the Gate City Oil Company was accomplished was substantially as follows, as set forth in respondent's brief: That Flack, Jacobs, and Lynch "de-

vised a plan for the payment, under which they could hold the respondents, J. Jerome Smith and F. F. Giottonini, to contribution thereunder, save themselves from liability, and at the same time release the property of the Gate City Oil Company, the principal debtor, from the effect of the judgment, to the end that it might be sold to the Northern Oil Company, thus retaining the proceeds of such sale within their own control and for their own use and defeating recourse by the defendant J. Jerome Smith and F. F. Giottonini against the property of the Gate City Oil Company, which had been practically sequestered to the payment of the judgment. As a part of this plan C. L. Flack, vice-president of the defendant and principal debtor, Gate City Oil Company, and its surety on the appeal bond, deposited money borrowed on Mr. Flack's personal credit with the Anglo and London-Paris National Bank in San Francisco, and by understanding with Mr. Lynch, arranged to have it paid on the judgment so that it would appear to be the money of the appellant Lynch, at the same time taking back an agreement from Lynch to pay to Flack all money he could recover by way of contribution from the defendants J. Jerome Smith and F. F. Giottonini. The judgment was then fully satisfied of record and the sale of the Gate City Oil Company's property was consummated to the Northern Oil Company and the proceeds of the sale (four thousand dollars in form of a check and the remainder in notes) turned over to Mr. Flack as vice-president of the Gate City Oil Company. Mr. Flack personally received back the surplus money over what had been deposited by him for payment of the judgment, in amount $104.78.''

Appellant relies upon the form of the entry on the judgment-book in satisfaction of the judgment of the San Joaquin Valley Bank, which is as follows: ''The within judgment is hereby fully paid, satisfied and discharged this 8th day of July, 1915, by the payment of the sum of $8,145.22-100 same being the money of J. F. Lynch''; and also upon the testimony of Flack and the testimony given by appellant himself.

Mr. Flack was a resident of Los Angeles and in the early part of July, 1915, he met the defendant Lynch in San Francisco at the Anglo and London-Paris National Bank. The witness was asked the following question: ''Q. What, if anything, did you have to do with providing the money

for the payment or satisfaction of this judgment as indicated there? A. Well, I gave Mr. Lynch a certificate or cashier's check, I forget which now, for eight thousand dollars; I handed him a check payable to the California-Anglo Bank for $250; and he handed those to the California Bank. I was standing there when he did it. He passed them through the window to the bank. Q. Was that your money by which that judgment was discharged? A. No, sir; I had turned it over to Mr. Lynch, and he turned it into the bank. Q. Was that the money of the Gate City Oil Company? A. No, sir; no part of it. . . . Q. State what, if any, transaction took place between you and J. F. Lynch on or about the eighth day of July, 1915, with respect to any money transaction whereby he had received any money from you, or you had received any money from him, the 6th of July. A. I let Mr. Lynch have— Q. (Intg.) I wish you would tell just what took place between you and Mr. Lynch. A. I met Mr. Lynch in San Francisco. I met him at the Anglo-California Bank. I gave to Mr. Lynch at that time— Q. (Intg.) Mr. Flack, the court has sustained the objections to 'gave.' A. I handed to Mr. Lynch at that time a cashier's check, my recollection is for eight thousand dollars, with the understanding—with the agreement— Q. (Intg.) I do not care about the understanding. State what took place between you. A. Mr. Lynch gave me an agreement to repay the money; I handed him a check for $250. We stepped up to the window of the Anglo-California Bank, and he laid the check and the cashier's check down and asked for a receipt for that money. I think he has got the receipt now; and then we talked there with him a little while and went away. Mr. Lynch has got a copy of our agreement and the receipt that the bank gave him." The agreement was then offered and received in evidence and is as follows:

"In the Superior Court of the State of California, in and for the County of San Joaquin.

"No. 10002.

"The San Joaquin Valley Bank, a Corporation, Plaintiff,

vs.

"Gate City Oil Company, a Corporation, et al., Defendants.

"This is to certify and I do hereby certify, that C. L. Flack has this day advanced to me and deposited in bank

for my use and benefit the sum of eight thousand one hundred and fifty (8,150.00) dollars, with which I desire to pay and will pay the judgment in the above entitled action to protect my own property from execution and in order to secure the said C. L. Flack in the repayment of said money to him by me I have this day assigned to said Flack all the right, title and interest that I now have or may hereafter have or acquire in and to all money and things of value that I may recover or collect or that may be paid by or collected from the Gate City Oil Company, J. Jerome Smith and F. F. Giottonini, or any of them as a contribution or payment to me by them, or any of them, or their respective proportions or shares of the judgment in the above entitled action, under the law of contribution, by reason of the payment of said judgment by me, one of the co-judgment debtors in said action.

"(Signed) J. F. Lynch."

"Q. That is the agreement to which you referred in your testimony? A. That is the agreement. I am familiar with Mr. J. F. Lynch's signature, and that is his signature. I saw him sign it. He has not paid me back any portion of the moneys specified in that agreement; and no one else has paid it to me." On cross-examination: "Q. You were tending to a sale of the Gate City Oil Company's interest to the Northern Oil Company? A. That was what I was negotiating. The cashier's check that I have referred to was issued by the Bank of Riverbank. I was not an officer of that bank at any time. Q. When did you obtain that cashier's check from the bank at Riverbank? A. I think it was two or three days before that; I could not tell you exactly. Q. Did the Northern Oil Company, before it would close the trade for the purchase of the Gate City, require this judgment to be paid off? A. Yes, they would not take the property with any lien on it of any kind. Q. Didn't you get that cashier's check from the bank at Riverbank for the purpose of using it in satisfying this judgment? A. I did not get all the money— Q. (Intg.) Will you answer my question? A. For the purpose of paying that off? I got that check for the purpose of giving that money to Mr. Lynch, or letting him have it so he could pay it off. Q. Obtain it for the purpose of paying the judgment of the Gate City Oil Company? A. What I am telling you, for the purpose of lending it to Mr. Lynch so he could go and pay it over. Q. Did you intend

that the eight thousand dollars evidenced by the cashier's check should be used in satisfying the bank's judgment against the Gate City Oil Company? A. Yes, sir; I did. Q. That was your intention and purpose when you withdrew that money from the bank at Riverbank, was it not? A. Yes, sir. . . . Q. Whose money was that money in the Bank of Riverbank, when you obtained the cashier's certificate? A. It was mine. Q. Whose money was it that you drew a $250 check for? A. That was mine. Q. In a Los Angeles bank? That was your money? A. That was mine. Q. And it was the check of yours you had drawn upon the bank of Los Angeles for $250, and the eight thousand dollar cashier's check of the Bank of Riverbank, that you had with you at the Anglo Bank in San Francisco? A. Yes, sir. . . . Q. At that time you were interested, as manager of the Gate City Oil Company, in selling its properties to the Northern Oil Company, were you not? A. I was not manager, but I was interested in selling it; I was vice-president. Q. You were there for the purpose of doing whatever the Northern Oil Company required, so that you could close the trade in selling the Gate City Oil Company property? A. That is what I was there for, to clean up the title. I was vice-president of the Gate City Oil Company that was defendant in the San Joaquin Valley Bank suit; I was a bondsman on the appeal in that case, and had not been released therefrom at the time I met Mr. Lynch in San Francisco. Q. The only security that Mr. Lynch gave you for this $8,150 is represented in this agreement that has been offered and received in evidence? A. That is all. Q. In other words, you were to let him have the money, he was to pay it, and then he was to call upon these other people for contribution, and whatever he received upon contribution he was to pay back to you? A. Yes, sir. . . . Q. In other words, you used this money you speak of for the purpose of getting some money back out of J. Jerome Smith and F. F. Giottonini? A. Yes, sir. Q. While if you paid it as the Gate City Oil Company's money, then, as between you, you could not get any of it back, is that not so? A. No; that is not properly so; I am not in the habit of loaning eight thousand dollars upon such security. Q. Didn't you just simply transfer this money into Mr. Lynch's name so you might come back in and obtain from Giottonini and Smith some portion of that money? A. My idea was to get

the money; I just made the deal with Mr. Lynch so Mr. Lynch could pay the judgment, and then Mr. Lynch, when he recovered back, was to pay me back the amount of money that he got; and if I say so, he will have to pay it all back. Q. In other words, you are using Mr. Lynch as a convenience to get back some of the money from Smith and Giottonini? ... A. I did not put it that way, as 'a convenience.' Q. Well, you expected, by operating through Mr. Lynch in the way you have testified, that you stood a chance to get back some of the money from Smith and Giottonini? A. Yes, I thought I would get it back.''

He testified further that upon delivery of his checks to the Anglo Bank, the Northern Oil Company paid him four thousand dollars, which was the first installment to be paid upon the transfer of the property, and he deposited that money to his credit in the Bank of Riverbank, and that the Northern Oil Company also delivered the notes and other securities making up the balance of the purchase price.

Defendant J. F. Lynch testified that he met Mr. Flack in San Francisco on the 6th of July, 1915, and being asked what occurred at the time between them, answered: ''Well, I had explained to Mr. Flack in Stockton before, in reference to this judgment, and I told him that I was a little afraid about this judgment, that the execution might issue and be levied upon my property, and that he had agreed to help me out in the matter, and I expected him to do so, and he said he would see about it.'' He testified he received checks from Mr. Flack to the amount of $8,250 on the 6th of July, and that he deposited it in the bank at San Francisco. ''Q. What was afterward done with it? A. It was sent to the bank here in Stockton to pay this San Joaquin Valley Bank judgment. I am the applicant for contribution here. I was present when this memorandum was made on the judgment book 'H' of the superior court of this county. The money was paid over at that time and place as there indicated, and it was my money; I borrowed it from Mr. Flack; I have not paid him back; I still owe him the money.''

W. F. Duffy, cashier of the Anglo and London-Paris National Bank, made affidavit: ''That on or about the sixth day of July, 1915, one C. L. Flack, accompanied by one J. F. Lynch, and two gentlemen representing the Northern Oil Company, came to said Anglo and London-Paris National

Bank, and said Flack then and there delivered to affiant a cashier's check on the First National Bank of Riverbank, in the sum of eight thousand dollars, and a check of C. L. Flack drawn on the First National Bank of Los Angeles, in the sum of $250, and instructed affiant that said check be forwarded by said Anglo and London-Paris National Bank to the Stockton Savings and Loan Society, at Stockton, California, to be by said Stockton Savings and Loan Society utilized to whatever extent might be necessary to satisfy the judgment, interest and costs, laying in judgment, rendered in favor of the San Joaquin Valley Bank against the Gate City Oil Company, the proceeds, if any, remaining after the satisfaction of such judgment, interest, and costs, to be returned to said Anglo and London-Paris National Bank and held subject to the order of said C. L. Flack. That said C. L. Flack, or said J. F. Lynch, stated to affiant at said time and place that he wanted it to be understood that the aforesaid sum of $8,250 was being paid by said J. F. Lynch; that immediately after handing affiant the aforesaid checks, said C. L. Flack deposited with said Anglo and London-Paris National Bank, to the credit of the aforesaid First National Bank of Riverbank, a voucher check drawn by Northern Oil Company, in favor of Gate City Oil Company, in the amount of four thousand dollars.''

Thomas E. Connolly, cashier of the Stockton Savings and Loan Society, made affidavit that on the seventh day of July, 1915, he had a conversation by telephone with the Anglo and London-Paris National Bank with reference to the payment of the judgment in question in which he was informed by the latter bank that a deposit of $8,250 had been made with the latter bank to be used in satisfying said judgment, and on the same day he received a letter from that bank dated July 6th, informing his bank of the deposit and the purpose for which it was made, and stating, among other things: ''Mr. J. F. Lynch, as one of the interested parties, states that he will call on you to-morrow morning, and desires to cooperate with you in the satisfaction of this judgment. Mr. Lynch, however, is without authority in the matter, and we would request that prompt action be taken in accordance with the terms of this letter. It is his desire that when payment is made it shall be specifically stated in the records that it is he, personally, who is satisfying the judgment, his object

being to lay the foundation for a claim against his codefendants for their proportion of the judgment. If it can be handled in this way, it will be an act of courtesy to Mr. Lynch, but the judgment should be satisfied even if his wishes in this respect cannot be met." The letter closes with a request that report be made of the satisfaction of the judgment, etc.

R. B. Teefy, cashier of the San Joaquin Valley Bank, plaintiff in the action, made affidavit: That Thomas E. Connolly, cashier of Stockton Savings and Loan Society, on July 8, 1915, "handed witness as cashier of plaintiff company a certificate of deposit for the sum of $8,145,22, drawn in favor of the said San Joaquin Valley Bank as and for the payment in full of the judgment heretofore rendered in favor of the San Joaquin Valley Bank and as against said defendants in the action entitled as above. That said deponent on behalf of the said San Joaquin Valley Bank thereupon accepted said certificate of deposit in full payment and satisfaction of said judgment, and entered upon the records in said clerk's office the following statement, to wit: 'The within judgment is hereby fully paid, satisfied and discharged this 8th day of July, 1915, by the payment of the sum of $8,145.22-100 same being the money of J. F. Lynch.' (Signed) 'The San Joaquin Valley Bank, by R. B. Teefy, Cashier.'" He further deposed: "That deponent did not at said time know, and does not now know, who furnished the money for the payment of said judgment as evidenced by said certificate of deposit, but that one J. F. Lynch was present at the time of said payment and said delivery of said certificate of deposit by said Thomas E. Connolly to deponent, and then and there requested deponent to make the written statement 'same being money of J. F. Lynch.' That deponent was advised by counsel that such writing could work no injury to said the San Joaquin Valley Bank, and as a matter of closing the transaction, deponent wrote said statement, 'same being money of J. F. Lynch.'" A copy of the certificate of deposit referred to showed that the money was deposited by the Stockton Savings and Loan Society.

It is unnecessary to go further into the evidence, of which there was, together with the facts above appearing, sufficient to show that the claim made by respondents, quoted above from their brief, is clearly established and that the court was

fully justified in making its findings and that the order appealed from is abundantly supported. It seems to us that what took place between Flack and Lynch in the Anglo and London-Paris National Bank, at the time Flack's certified check on the Bank of Riverbank for eight thousand dollars and his check on a Los Angeles bank for $250 were passed over the counter of said Anglo Bank was mere camouflage which failed to conceal the true nature of the transaction.

Appellant urges the point that it was error for the court to admit, over appellant's objection, the various affidavits introduced by respondents to meet the motion which was itself based upon Lynch's affidavit. There is no merit in this contention. (Code Civ. Proc., sec. 2009; *California M. & S. Bank* v. *Graves,* 129 Cal. 649, [62 Pac. 259] ; *Guardianship of Van Loan,* 142 Cal. 423, [76 Pac. 37].)

The entry on the margin of the judgment-book referring to the payment of the judgment, to wit: "same being the money of J. F. Lynch," was the statement of an immaterial fact, was unknown to be the fact by the cashier of the bank who made it and was made to carry out the plan concocted in the Anglo and London-Paris National Bank. It was not conclusive on anybody and was in violation of the actual facts. Appellant's right to contribution under section 709 of the Code of Civil Procedure depended entirely upon his paying the judgment, and as he did not pay it, he failed to establish any right to contribution. There is no question as to the scope of section 709 of the Code of Civil Procedure, for it has been held by this court that a rule of procedure and not a maxim of substantive law is announced by that statute. "It simply provides a convenient method of enforcing contribution by a judgment debtor who had paid a judgment as against a codefendant or codefendants liable for a proportion of the debt." (*Dow* v. *Sunset Tel. & Tel. Co.,* 162 Cal. 136, 138, [121 Pac. 379].)

Respondents advance the point that the principal debtor, the Gate City Oil Company, and J. F. Lynch having appealed from the judgment and having given an undertaking staying execution of the judgment, the original sureties (respondents here) were thereby released so far as any right to contribution is concerned. This, for the reason that "if the rule were otherwise it would permit the property of the prin-

cipal debtor to be released and disposed of and thereby shift payment to other and prior sureties.'' (Citing cases.)

We do not find it necessary to pass upon the point. The order of the court finds ample support in the evidence, and it is therefore affirmed.

Hart, J., and Burnett, J., concurred.